IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CLARKE'S ALLIED, INC., *Plaintiff*, v. RAIL SOURCE FUEL, LLC, et al., *Defendants*. | CASE NO. 2:12-cv-79-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is (1) the Motion to Confirm the Arbitration Award and for Entry of Final Judgment (Dkt. No. 25) filed by Defendant/Counterclaimant Rail Source Fuel, LLC ("Rail Source"), and (2) the Motion to Vacate or Modify the Arbitration Award (Dkt. No. 30) filed by Plaintiff/Counter-Defendant Clarke's Allied, Inc., ("CA"). For the reasons set forth below, the Court **GRANTS** Rail Source's Motion to Confirm the Arbitration Award (Dkt. No. 25) and **DENIES** CA's Motion to Vacate or Modify the Arbitration Award (Dkt. No. 30).

### BACKGROUND

This case stems from CA's suit against Rail Source to recover the remaining balance of $155,500.41 from a construction contract for which CA alleged it was due, and to enforce and foreclose on CA's mechanic's lien for that amount under the Texas Property Code. (Original Compl. ¶ 9, Dkt. No. 1-1.) Following removal to federal court, CA filed a motion in this Court to compel mediation and arbitration pursuant to the parties' contract. (Mot. to Compel ¶ 1, Dkt. No. 6.) On December 11, 2012, this Court granted CA's request. (Order Compelling Mediation, Dkt.

1

No. 18.) CA now wishes to vacate the final award from the arbitrator under 9 U.S.C. §§ 10(a)(4) or 11(b).

The following facts are largely undisputed and established by the record in this case. In early 2011, CA entered into a contract (the Agreement) with Rail Source and Vicky Shade to provide labor, materials, and work for improvements to certain real property regarding which Rail Source was the purported owner of a leasehold interest. (Agreement at 1, Dkt. No. 25-1.) In that Agreement, the parties included the following language:

> 14.1 If any dispute arises between the parties, the parties shall first mediate their dispute, utilizing American Arbitration Association ("AAA"). The parties shall attempt to settle on a mediator, but if they fail to do so, shall accept a mediator chosen by AAA. The mediation shall take place as soon as reasonably possible in Kansas, at a location agreeable to all parties. Parties may attend by video. Costs shall be split equally between the parties.
> 14.2 If the mediation is unsuccessful, either party may request arbitration and appoint an arbitrator selector. The other party shall also choose an arbitrator selector, and the two arbitrator selectors shall choose an arbitrator. If the choice of the arbitrator is not made within 10 days of the choosing of the first arbitrator selector, then either party may apply to AAA to appoint the required arbitrator.
> 14.3 The arbitrator chosen as provided by Section 14.2 shall proceed according to AAA Rules governing arbitration, and the award of the arbitrators shall have the effect therein provided. The arbitration shall take place where the mandatory mediation occurred. Parties may attend by video.

(*Id.* at 5).

After resolving issues concerning conflicts of law, expert qualifications and methodology, and certain other procedural rulings, the arbitrator conducted nine and one-half days of evidentiary hearings. (Interim Award at 1, Dkt. No. 33-5.) The arbitrator issued an Interim Award on June 12, 2014. (Def.'s Resp. at 2–3, Dkt. No. 33; Interim Award, Dkt. No. 33-5.) In that award, the arbitrator denied CA's mechanic's lien claim based upon CA's breach of

2

the Agreement, and correspondingly found in favor of Rail Source on its breach of contract counterclaim. (Interim Award at 10.)

In ruling on such claim, the arbitrator made numerous factual findings, including among others:

- "RSF ultimately paid Clarke's $916,850.77 of the $1,072,351.18 agreed price [in the contract]." (*Id.* at 2.)

- "The primary purpose of the project ('Project'), located in Domino, Texas, was to convert RSF's tie-grinding operation from diesel to an electric-powered system." (*Id.*)

- "A key component to the Project was the 'hog' that grinds the ties into small pieces of wood (the fuel)." (*Id.*)

- "The hog was supplied by Montgomery Industries ('Montgomery') to RSF, but installed by Clarke's. Clarke's also built the foundation for the hog (and pedestals for the cranes)." (*Id.*)

- After installation, "[o]n August 12, 2011, RSF provided Clarke's a written list of problems with Clarke's system." (*Id.*)

- "On or about July 12, 2011, the parties encountered problems with the tie-grinding system. The primary issue was that after a number of hours of operation, the ties would become stuck in Clarke's infeed hopper, causing the hog to shut down." (*Id.*)

- "RSF then purchased a replacement hopper from Montgomery, but Clarke's said it would charge $25,400 for that installation and modification. Clarke's offered to not charge RSF if the new hopper worked." (*Id.*)

- "On September 11, 2011, RSF rejected that offer and elected not to install the Montgomery hopper. On October 6, 2011, RSF rejected, in writing, all of the goods sold

and installed by Clarke's. In mid-October 2011, RSF told Clarke's not to return to the Project." (*Id.*)

In the arbitrator's final award, the arbitrator considered the issues of expenses and fees. (Final Award, Dkt. No. 30-6). In the final award, the arbitrator (1) denied Rail Source's request for attorney's fees, (*id.* at 3–4); (2) awarded Rail Source $193,352.59 in expenses, (*id.* at 4); and (3) assessed fees for the American Arbitration Association and Arbitrator totaling $45,489.00 against CA, for which CA had to reimburse Rail Source $34,194.50, (*id.* at 5). Therefore the total award due from CA and payable to Rail Source totaled $1,144,398.86. (*Id.*)

## APPLICABLE LAW

Under 9 U.S.C. § 10(a)(4), a district court "may make an order vacating the [arbitration] award upon the application of any party to the arbitration . . . (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

Under 9 U.S.C. § 11(b), a district court "may make an order modifying or correcting the award upon the application of any party to the arbitration . . . (b) [w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." 9 U.S.C. § 11.

"[R]eview of the arbitrator's award itself, however, is very deferential." *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013). A court "must sustain an arbitration award even if [it] disagree[s] with the arbitrator's interpretation of the underlying contract as long as the arbitrator's decision 'draws its essence' from the contract." *Id.* "In other words, [a court] must affirm the arbitrator's decision if it is rationally inferable from

4

the letter or the purpose of the underlying agreement." *Id.* "In deciding whether the arbitrator exceeded its authority, [a court] resolve[s] all doubts in favor of arbitration." *Id.*

## DISCUSSION

### A.

CA mainly argues that the arbitrator's interim award improperly granted Rail Source a "recession" remedy under the Oregon version of the Uniform Commercial Code. (Mot. at 7, Dkt. No. 30.) CA claims that Rail Source never asserted a claim against CA for rescission and never requested a remedy of rescission, as contemplated in the arbitrator's interim award. (*Id.*) As a result, CA believes that the arbitrator's award violates 9 U.S.C. § 11(b) by awarding upon a matter not submitted to him and 9 U.S.C. § 10(a)(4) by exceeding the arbitrator's power.

Rail Source argues that CA's repeated contention that the arbitrator granted a "rescission" contrary to Oregon law is wrong. (Resp. at 10, Dkt. No. 33.) Rail Source argues that the arbitrator found the total contract price to be $1,072,351 of which Rail Source had indisputably paid $916,850 when the parties reached an impasse. (Resp. at 10.) Rail Source argues that the arbitrator determined that CA's work was defective in multiple respects, and that Rail Source rightfully rejected the CA system as a whole. (Resp. at 10.) Rail Source argues that the arbitrator did not base the award on incorrect law, cited the Oregon law upon which he based his damages award, and rejected the Defendant's contention on more than one occasion. (*Id.*)

The Court agrees with Rail Source that the particular reasons proffered by CA are insufficient to vacate the award. The arbitrator drew the essence of his remedy from the contract. *Timegate Studios, Inc.*, 713 F.3d at 802. The Court finds that the award is rationally inferable from the letter or the purpose of the underlying agreement. *Id.*

5

Particularly, the Court finds that the arbitrator addressed CA's argument concerning the "rescission" remedy and concluded that "in this situation the buyer may recover the purchase price paid—it is not necessary to present evidence of the cost of repair or replacement." (Interim Award at 9 & n.3, Dkt. No. 33-5 (citing Or. Rev. Stat. 72.7110(1)).) Additionally, the Court rejects CA's argument that Rail Source never asked for the monetary relief requested, as Rail Source provides citation to a brief where it specifically asks for (1) $916,850.77—the exact amount awarded; and (2) an additional $900,000 Rail Source allegedly paid to other parties (which the arbitrator did *not* award to Rail Source). (Def.'s Reply at 5, Dkt. No. 35.) The Court also notes that the arbitrator denied Rail Source's request for $5,000,000 in consequential damages. (Interim Award at 9–10, Dkt. No. 33-5.) Under these circumstances, the Court concludes that the arbitrator did not exceed his powers or so improperly executed them that a mutual, final, and definite award was not made.

**B.**

CA next argues that the arbitrator awarded Rail Source unsegregated fees and costs. CA argues that the arbitrator failed to segregate recoverable fees applicable to Rail Source's defense of CA's mechanic's lien from unrecoverable fees applicable to all of Rail Source's counterclaims. (Mot. at 16.)

Rail Source argues that the arbitrator properly excluded unsegregated fees and awarded only those expenses for which Rail Source had the necessary cotemporaneous time records. (Resp. at 10–11.) Rail Source acknowledges that some of the expenses did "double duty," in that "they advanced claims for which expenses were recoverable and for which they were not recoverable." (Resp. at 5–6.) Rail Source argues that the arbitrator accepted Rail Source's factual statements, excluded *all* fees because they lacked cotemporaneous billing records (and therefore

6

could not be segregated) and awarded reasonable expenses that did contain cotemporaneous time records that either were attributable in some form to the claim on which Rail Source prevailed or were solely attributable to the claim on which Rail Source prevailed. (*Id.* at 5–6, 9–10.)

The Court does not find CA's argument to be persuasive. The arbitrator's decision in this regard does not rise to the level that requires the Court to vacate the arbitrator's award. The arbitrator's decision on this issue drew its essence from the contract. Accordingly, the Court must sustain the arbitration award even if it disagrees with the arbitrator's precise interpretation. Given the high deferential standard afforded to an arbitrator's decision, the Court will not, in these circumstances, overturn his award on this ground.

All other arguments by CA are expressly rejected under the same reasoning.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Rail Source's Motion to Confirm the Arbitration Award (Dkt. No. 25) and **DENIES** CA's Motion to Vacate or Modify the Arbitration Award (Dkt. No. 30).

**So ORDERED and SIGNED this 24th day of September, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE